**UNITED STATES DISTRICT COURT**
Western District of Kentucky
Paducah Division

| | |
|---|---|
| Sarah Elliott ) | |
|     *Plaintiff* ) | |
| ) | |
| v. ) | Case No.   5:21-cv-00108-TBR-LLK |
| ) | |
| Ally Financial, Inc. *et al.* ) | |
|     *Defendants* ) | |
| ) | |

**SUPPLEMENTAL COMPLAINT AGAINST DEFENDANT
CREDIT CONTROL, LLC**

**INTRODUCTION**

1. This is a complaint for damages for Defendant Credit Control, LLC's additional violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, based on acts and events discovered after Plaintiff filed her initial Complaint in this action on July 23, 2021 [DE 1].

**JURISDICTION AND VENUE**

2. Jurisdiction of this court arises under 15 U.S.C. § 1692k. Venue is proper because Plaintiff lives and resides in Trigg County, Kentucky and because all or most of the relevant events as alleged below occurred in Trigg County, Kentucky, which is located within this District.

**PARTIES**

3. Plaintiff Sarah Elliott is a natural person who resides in Trigg County, Kentucky and a "consumer" within the meaning of the FDCPA and the FCRA.

4. Defendant Credit Control, LLC is a foreign limited liability company that has registered with the Kentucky Secretary of State to do business in the Commonwealth of Kentucky. Credit Control's principal place of business is located at 5757 Phantom Drive, Suite 330,

Hazelwood, MO 63042. On its website, Credit Control proclaims that it "[o]ur seasoned and highly trained collection staff has consistent top tier performance recovering defaulted accounts…". www.credit-control.com/collection-services/ Credit Control's principal purpose and reason for its existence is the collection of debts from consumers.

5. Credit Control regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6). Credit Control is also "furnisher of credit information" within the meaning of the FCRA.

## STATEMENT OF FACTS

6. In July 2013, Ms. Elliott purchased a new 2013 Mazda 3 in Clarksville, TN that she financed through Defendant Ally Financial Inc. ("Ally").

7. Ms. Elliott used the 2013 Mazda 3 for personal, family, and/or household purposes, which makes the Ally loan a "debt" within the meaning of the FDCPA.

8. Unfortunately, Ms. Elliott fell behind on her payments to Ally. The account went into default. Ally repossessed the Mazda 3 and presumably sold the Mazda 3 as permitted by the underlying contract and Kentucky's Uniform Commercial Code ("KUCC") and/or Tennessee's Uniform Commercial Code ("TUCC").

9. Under both the KUCC and TUCC, a secured creditor like Ally is not required to repossess secured property. Rather, a secured creditor can accelerate the debt and allow a consumer to keep the secured property. In this scenario, the secured creditor may proceed against the debtor with all contractual and legal remedies on the defaulted note. But if the secured creditor elects to repossess and sell the repossessed property, then both the KUCC and TUCC place a considerable duty of care on the secured creditor.

10. In particular, in order to pursue a deficiency judgment against the consumer, the secured creditor is required to keep the repossessed property safe and dispose of it in a commercially reasonable manner. If the secured creditor fails to dispose of the secured property in a commercially reasonable manner, the secured creditor is precluded by law from pursing the debtor for a deficiency balance.

11. Ally was reporting negative credit information about Ms. Elliott and the Mazda 3 loan to the CRAs for purposes of attempting to collect the alleged Mazda 3 loan deficiency from her.

12. Ally was reporting that Ms. Elliott owes a deficiency balance of $9,734 to Ally under the Mazda 3 loan. This amount seemed high and wrong to Ms. Elliott.

13. In order to get more information about the deficiency Ally claimed was due from Ms. Elliott, on November 30, 2020, Ms. Elliott exercised her statutory right under TN ST 47-9-616 to obtain an explanation of the deficiency from Ally. In the same letter, she exercised her rights under TN ST 47-9-210 and KRS 355.9-210 to obtain an accounting of the alleged amount due and owing.

14. On January 15, 2021, Ally replied to Ms. Elliott's November 30, 2020 letter, stating as follows:

Reference information on the above account is as follows:

Name:                              Sarah E Elliott

Contract Date:                     7/31/13
High Credit:                       $30,941.85
Term:                              72
Date Last Paid:                    11/30/17
Date Next Due:                     9/28/16
Monthly Payment:                   $9,733.77
# of Payments Remaining:           1
Current Outstanding Balance:       $9,733.77

Our records indicate the following payment experience:

| Delinquency   | # of Occurrences |
|---------------|------------------|
| 30 Days Late  | 6                |
| 60 Days Late  | 4                |
| 90 Days Late  | 1                |
| 120 Days Late | 1                |
| 150 Days Late | 0                |
| 180 Days Late | 0                |

Additional Comments:

- Your vehicle was Repossessed.
- Your account was charged off as a Loss as of 09/28/16.

15.     The above "explanation" omits several important pieces of information including the amount Ally received from the repossession sale; the date of the sale; and credits (such as rebates of unearned fees) and debits to Ms. Elliott's account in connection with the repossession and sale of the Mazda 3.

16.     In its January 15, 2021 letter, Ally included a copy of the retail installment sales

contract ("RISC") for the sale of the Mazda 3. The RISC noted that Ms. Elliott financed a $600 GAP Insurance policy and a $1,571 Service Contract in connection with the purchase and financing of the RISC.

17. In order to meet its obligation to dispose of the Mazda 3 in a commercially reasonable manner and to recover a properly calculated deficiency, Ally was required to rebate any unearned finance charges including any unearned part of the GAP Insurance premium and Service Contract fee.

18. In 2016, a nationwide class action was filed against Ally in *Ally Financial Inc. v. Haskins* et al., Case No. 16JE-AC01713-01 (Cir. Ct. Jefferson County, MO).

19. On May 9, 2018, the *Haskins* Court certified two classes, one of which included Ms. Elliott's loan.

20. The parties to case entered into a Class Action Settlement Agreement and Release on March 17, 2021.

21. The *Haskins* Court entered a Final Approval Order on August 9, 2021.

22. On March 4, 2021—less than two weeks *before* the parties in *Haskins* filed their Class Action Settlement Agreement and Release, Credit Control sent Ms. Elliott a dunning letter on Ally's behalf in an attempt to collect the alleged deficiency balanced of $9,733.77 on the Ally loan.

23. Credit Control's March 4, 2021 dunning letter did not inform Ms. Elliott that her Ally loan was included in the *Haskins* class action.

24. Credit Control's March 4, 2021 dunning letter did not inform Ms. Elliott that the *Haskins* Court had certified two classes, one of which included Ms. Elliott's Ally loan.

25. Credit Control's March 4, 2021 dunning letter did not inform Ms. Elliott that, most

likely, the deficiency balance on her Ally loan would be eliminated under the Class Action settlement in *Haskins*.

26. Credit Control violated the FDCPA by failing to notify Ms. Elliott about the pending *Haskins* class action and probable settlement and by misrepresenting the status of the Ally loan in the March 4, 2021 dunning letter.

## CLAIMS FOR RELIEF

27. The foregoing acts and omissions of Defendant Credit Control, LLC constitute violations of the FDCPA, which violations each created a material risk of harm to the interests recognized by Congress in enacting the FDCPA. Credit Control's violations include, but are not limited to:

- Violation of 15 U.S.C. § 1692e(A)(2)—Credit Control misrepresented the status of the Ally loan in the March 4, 2021 dunning letter it sent to Ms. Elliott. Credit Control's dunning letter failed to notify her that the Ally loan was included in the *Haskins* class action and that the Ally loan was included in one of the classes certified by the *Haskins* Court.

- Violation of 15 U.S.C. § 1692f—Credit Control engaged in an unfair or unconscionable means to collect the Ally loan from her in the March 4, 2021 dunning letter without advising her that the Ally loan was included in the *Haskins* class action and that the Ally loan was included in one of the classes certified by the *Haskins* Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Sarah Elliott request that the Court grant her the following relief in connection with this Supplemental Complaint:

1. Award Plaintiff all relief previously requested against Credit Control in her original Complaint;

2. Award Plaintiff maximum statutory damages against Credit Control, LLC for its violations of the FDCPA as alleged in this Supplemental Complaint pursuant to 15 U.S.C. §1692k;

3. Award Plaintiff actual damages against Credit Control, LLC for its violations of the FDCPA as alleged in this Supplemental Complaint pursuant to 15 U.S.C. §1692k;

4. Award Plaintiff her attorney's fees, litigation expenses and costs;

5. A trial by jury; and

6. Any other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ James H. Lawson
James H. Lawson, KBA 86930
*Lawson at Law, PLLC*
P.O. Box 1286
Shelbyville, KY 40066
Tel:   (502) 473-6525
Fax:   (502) 473-6561
james@kyconsumerlaw.com