IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH

| | |
|---|---|
| SARAH ELLIOTT, | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) Case No. 5:21-cv-00108 (TBR) |
| ALLY FINANCIAL, INC., et al., | ) ) |
| *Defendants.* | ) ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Credit Control, LLC's Motion to Dismiss, (Mot. to Dismiss), Dkt. 31. Plaintiff Sarah Elliott has responded, (Resp.), Dkt. 37. The time for Credit Control to reply has elapsed. As such, briefing is complete and this motion is ripe for adjudication. For the reasons that follow, Credit Control's Mot. to Dismiss, Dkt. 31, is **DENIED**.

**I.    FACTUAL BACKGROUND**

The facts as they relate to Credit Control, the only defendant currently filing a motion to dismiss, are outlined below.

In July 2013, Sarah Elliott purchased a vehicle that she financed through Ally Financial Inc. *See* Compl., Dkt. 1-1, ¶ 29. Elliott fell behind on her payments to Ally and eventually went into default. *See id.* ¶ 30. That's when, according to Elliott, Ally repossessed and sold the vehicle. *See id.* ¶¶ 30–32. Elliott alleges that after the vehicle was sold Ally reported that she owed a deficiency balance of $9,734. *See id.* ¶ 34.

Credit Control, LLC is a company that regularly collects or attempts to collect debts asserted to be owed or due to another. *See id.* ¶¶ 7–8. On March 4, 2021, Elliott received a

dunning letter[1] from Credit Control informing her that Credit Control was responsible for collecting Elliott's debt to Ally. *See id.* ¶ 49. The letter, written on Credit Control letterhead: identified Ally Financial as the original and current creditor, referenced Elliott's original and current account numbers, and included a statement reflecting a balance due of $9,733.77. *See* Letter, Dkt. 31-1; *see also* Appendix. The letter then offered several "savings options":

> Dear Sarah E Elliott, please be advised, our client, Ally Financial Inc., has placed the above-referenced account with our office for collection. We want to bring this matter to your attention. Subject to your rights set forth below or as otherwise provided by law, we have developed the following option(s) for you to resolve your account for less than the total Amount Due.
>
> 1. Resolve your account in 1 payment of $4,381.00. You save $5,352.77!
> 2. Resolve your account in 6 consecutive monthly payments of $893.00. You save $4,375.77!
> 3. Resolve your account in 12 consecutive monthly payments of $528.00. You save $3,397.77!
>
> Upon completion of one of the options above, your account will be considered resolved. This offer will remain open until at least 45 days after you receive this notice. We are not obligated to renew this offer.

*Ibid.*

Beneath those "savings options" were instructions for how Elliott could submit payments via the internet, mail, or telephone. *Ibid.* After that, the letter concluded with what Credit Control called "important disclosures":

> This communication from a debt collector is an attempt to collect a debt. Any information obtained will be used for that purpose.
>
> Unless you, within 30 days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by this office. If you notify this office in writing within the 30-day period that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will

---

[1] A dunning letter is a collection notice sent to a customer stating that payment for a debt is due or otherwise trying to collect upon a debt. *See, e.g.*, *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1189 (11th Cir. 2010) ("Since 'dunning' means 'to make persistent demands upon [another] for payment,' a 'dunning letter' may be considered as simply another name for a letter of collection.") (citing *Merriam–Webster Online Dictionary* 2010).

2

>be mailed to you by this office.  Upon your written request within the 30-day period, this office will provide you with the name and address of the original creditor, if different from the current creditor.

*Ibid.*

According to the Complaint, Credit Control's dunning letter did not inform Elliott that the legal collection of her debt was past the applicable statute of limitations, nor did the letter state that a suit would not be brought against her.  *See* Compl. ¶ 52.  Elliott has now filed suit against Credit Control, alleging violations of the Fair Debt Collection Practices Act.  *See id.* ¶ 53.

## II.     LEGAL STANDARD

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.' " *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

## III.    DISCUSSION

The Federal Debt Collection Practices Act is an "extraordinarily broad" statute passed by Congress "to address the widespread and serious national problem of debt collection abuse."

*Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014) (quoting *Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008)); *see also* 15 U.S.C. §§ 1692–1692p. To enforce the Act's provisions, Congress equipped consumers with a private right of action against debt collectors who violate the Act. *See* 15 U.S.C. § 1692(k)(a). Elliott has sued Credit Control under this private right of action for violating § 1692e and § 1692f of the Act. *See* Am. Compl. ¶ 87.

When determining whether particular conduct violates the Act, courts use the "least sophisticated consumer" standard, which treats recipients of debt collection letters as having "some level of understanding and [a] willing[ness] to read the document with some care." *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 396 (6th Cir. 2015). The purpose of this standard is to ensure that the Act protects all consumers, "the gullible as well as the shrewd," without accepting "bizarre," "idiosyncratic," or "nonsensical" readings of debt collection letters. *Id.* (quoting *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 509–10 (6th Cir. 2007)).

### A. *Section 1692e*

Section 1692e of the Fair Debt Collection Practices Act bans all "false, deceptive, or misleading" debt-collection practices. 15 U.S.C. § 1692e. The statute goes on to provide a non-exhaustive list of prohibited conduct, including making a false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The Sixth Circuit has interpreted this provision to mean that it is illegal for a dunning letter to create confusion about a creditor's right to sue. *See Buchanan*, 776 F.3d at 398. Whether a dunning letter is confusing raises a question of fact, which, "generally speaking," is an issue for a jury. *Id.* at 397; *see also id.* ("Courts do not lightly reject fact-based claims at the pleading stage.").

Consumer confusion about a creditor's right to sue can arise in numerous situations, including, as relevant here, when the statute of limitations has run. That's because even though "a debt remains a debt [] after the statute of limitations has run on enforcing it in court," a creditor "could not enforce [that] debt in court without facing a complete legal defense to it." *Buchanan*, 776 F.3d at 396–97. True, "a creditor remains free, in the absence of a bankruptcy order or something comparable," to try and collect a legally unenforceable debt by asking the debtor to pay it. *Id.* at 397. But in such a situation, it would be misleading and confusing, and would therefore violate the Act, for a creditor to make either an explicit or implicit threat of litigation. *See id.* at 397–99.

The parties agree, for the purposes of this motion to dismiss, that Elliott received Credit Control's dunning letter after the statute of limitations had run, meaning that Credit Control could not have enforced its debt in court.[2] *See* Mot. to Dismiss at 3 n.1; *see also* Resp. at 7–8. So, the question presented here is whether Credit Control's dunning letter created confusion by falsely implying that it had a right to sue Elliott.[3]

Although the Sixth Circuit has not considered the exact language of Credit Control's dunning letter, in-circuit case law, out-of-circuit case law, and the sense of urgency created by Credit Control's letter all indicate that Elliott has set out a plausible § 1692e claim.

---

[2] Credit Control "takes no position on, and does not concede, Plaintiff's claim that the statute of limitations had actually expired and reserves the right to take a position on that issue at a later date." Mot. to Dismiss at 3 n.1. Rather, Credit Control "proceeds under the assumption" that the statute of limitations on Elliott's debt had run, arguing that even after making this assumption Plaintiff still has failed to state a claim against Credit Control. *Id.*

[3] To prevail on a Fair Debt Collection Practices Act claim under § 1692e, the following elements must be present: (1) the plaintiff must be a "consumer" as defined by the Act; (2) the "debt" must arise out of transactions that are "primarily for personal, family or household purposes"; (3) the defendant must be a "debt collector" as defined by the Act; and (4) the defendant must have violated one of § 1692e's prohibitions." *Wallace v. Wash. Mut. Bank*, 683 F.3d 323, 326 (6th Cir. 2012)) (quotations and citation omitted). Credit Control does not dispute any of the first three elements. Therefore, the only question presented to the Court is whether Credit Control violated § 1692e, i.e., whether Credit Control created confusion and mislead Elliott by falsely implying that the debt was enforceable in court.

The Court begins with *Buchanan v. Northland Grp., Inc.*, the Sixth Circuit case that is most directly on point. *Buchanan* dealt with a dunning letter that used the phrase "settlement offer" in connection with a time-barred debt. *See* 776 F.3d at 399–400. The Sixth Circuit held that the phrase "settlement offer" could "plausibly mislead an unsophisticated consumer into thinking her lender could enforce the debt in court." *Id.* at 398. To support this conclusion, the court cited definitions of the terms "settle," "settlement," and "settlement agreement" taken from six formal and informal dictionaries. *See id.* at 399. Each of these dictionaries contained one definition that referred to concluding a lawsuit. *See id.* Thus, the Sixth Circuit concluded that a collection letter offering to "settle" a time-barred debt could serve as the basis for a Federal Debt Collection Practices Act claim. *See id.* at 399–400.

Both parties attempt to distinguish from and analogize to *Buchanan*. Credit Control argues that this dunning letter is not like the one in *Buchanan* because "the words 'settle' and 'settlement' appear nowhere in the letter" and "none of the language" in the letter "carries the same connotation the Sixth Circuit found 'most pertinent[]' in *Buchanan*." Mot. to Dismiss at 6 (providing citations to, but not quotations from, *Merriam-Webster's Dictionary*, *The Britannica Dictionary*, and *The Cambridge Dictionary*). By contrast, Elliott contends that Credit Control's use of the word "resolve" rather than "settlement" is a "distinction without a difference." Resp. at 10. For Elliott, this dunning letter is like the one in *Buchanan* because this language "necessarily implies that [Elliott] has legal obligation to pay Ally." *Id.* at 8.

Credit Control's argument fails where it begins. One of the dictionaries relied upon by the *Buchanan* court—*Webster's Third New International Dictionary*—offers numerous definitions of "resolve." One of those entries defines the verb as "to reach a decision about." *Webster's Third New International Dictionary* 1933 (1993). In that context, *Webster's* identifies

6

the word "settle" as a synonymous cross-reference for "resolve," meaning that "settle" may stand alone as the only definitional matter for "resolve." *Id.*; *see also id.* at 18a (explanatory notes). Put differently, "resolve" and "settle" are substitutable whenever they are used in this way. *Ibid. Webster's* illustrates this point by stating that "determined to *settle* all disputed points" and "determined to *resolve* all disputed points" mean the exact same thing. *Id.* at 1933 (replacing the swung dash with the words being illustrated); *see also id.* at 17a–18a (explaining how a synonymous cross-reference relates to a swung dash).

This dunning letter used the word resolve five times in total. Credit Control outlined several "option(s) for [Elliott] to *resolve* [her] account." Letter (emphasis added); *see also* Appendix. She could "[*r*]*esolve* [her] account in 1 payment"; "[*r*]*esolve* [her] account in 6 consecutive monthly payments"; or "[*r*]*esolve* [her] account in 12 consecutive monthly payments." *Ibid.* The letter continued, saying that Elliott's account "[would] be considered *resolved*" upon completion of any of those options. *Ibid.* In each of these instances, the word "resolve" meant that Elliott could reach a decision about her debt. *See Webster's Third New International Dictionary* at 1933. Because the words "resolve" and "settle" share this definition, *Buchanan* counsels that an unsophisticated consumer could still have been misled into thinking Credit Control could enforce this debt in court. Simply put: swapping out "settle" for an interchangeable word is not enough to differentiate this dunning letter from the one in *Buchanan*, meaning that Credit Control has not met its burden at the pleading stage.

Out-of-circuit precedent provides further support for the Court's reading of *Buchanan*. *See, e.g., Solis v. Commonwealth Fin. Sys., Inc.*, No. 18-CV-6130-SJF-AKT, 2020 WL 2523047, at *5 (E.D.N.Y. May 15, 2020) ("Most Circuits addressing the question have found that an offer to *settle* or *resolve* a time-barred debt is sufficient to plausibly state a claim even in the absence

7

of an express threat of litigation.") (emphasis added) (collecting cases).  For example, in *Holzman v. Malcolm S. Gerald & Assocs.*, the Eleventh Circuit, citing approvingly to *Buchanan*, held that "[d]espite the slight semantic difference" between offers to "resolve" a debt and offers to "settle" a debt, it still is plausible that an offer to "resolve" a debt "might . . . cause[] an unsophisticated consumer to mistakenly believe that the debt was legally enforceable and that he had something to gain by accepting the offer, or to lose by declining it."  920 F.3d 1264, 1272 (11th Cir. 2019).

      Finally, the rest of the language in this dunning letter, when read alongside the repeated calls to resolve the debt, could create a sense of urgency that would lead an unsophisticated reader to conclude that failure to make one of these payments would result in negative consequences, such as legal action.  First, the dunning letter stated that "[t]his offer will remain open until at least 45 days after" receipt of this notice and went on to claim that Credit Control was "not obligated to renew this offer."  Letter; *see also* Appendix.  Admittedly, this language does not explicitly state that Credit Control's "offer" would expire in forty-five days.  But, taken together, an unsophisticated reader could still look at that forty-five-day window and think that failure to make a payment within that time frame could result in legal action.  *See Holzman*, 920 F.3d at 1272.  Second, "if a debt collector is unsure about the applicable statute of limitations, ' it would be easy to include general language about that possibility' " in the dunning letter.  *Buchanan*, 776 F.3d at 400 (quoting *McMahon v. LVNV Funding*, LLC, 744 F.3d 1010, 1022 (7th Cir.2014)).  Although the Sixth Circuit has indicated that including such language can reduce confusion, Credit Control never warned Elliott that the age of the debt might preclude Ally and Credit Control from filling suit to enforce it.  *See id.*

Credit Control's offer to resolve a potentially time-barred debt, combined with a sense of urgency to accept a reduced-payment offer, could create confusion about a creditor's right to sue, especially because the letter contained no language about the applicable statute of limitations. *See Buchanan*, 776 F.3d at 398–400. Elliott's § 1962e claim is therefore sufficient to survive a motion to dismiss.

B. *Section 1692f*

The Fair Debt Collection Practices Act also prohibits debt collectors from using "unfair or unconscionable means" to collect or attempt to collect any debt. 15 U.S.C. § 1692f. In the Sixth Circuit, "[a] debt collector's action could be 'misleading' under § 1692e, 'unfair' under § 1692f, or . . . both." *Currier*, 762 F.3d at 536. If a § 1692f claim "rests on the same premise" as the plaintiff's § 1962e claim—namely, that the debt collector's letter was deceptive—"the two claims rise or fall together." *Virden v. Client Servs., Inc.*, No. 5:19-CV-00329, 2019 WL 4862066, at *5 (N.D. Ohio Oct. 2, 2019) (quoting *Wood v. Allied Interstate*, LLC, No. 17 C 4921, 2018 WL 2967061, at *2 (N.D. Ill. June 13, 2018)).[4]

Elliott claims that Credit Control violated § 1692f, citing the same reasons why Credit Control allegedly violated § 1692e. Because the Court finds that Elliott has adequately alleged a violation of § 1692e, *supra*, the Court concludes, based on that same reasoning, that Elliott's

---

[4] There are some district courts that treat § 1692f as a "backstop" to the Fair Debt Collection Practices Act, meaning that these courts only read § 1692f to cover actionable debt collection practices that are not expressly addressed in other sections of the Act. *See, e.g.*, *Meadows v. Caliber Home Loans*, No. 3:18-CV-00746, 2019 WL 1242667, at *3 (M.D. Tenn. Mar. 18, 2019). This line of cases traces back to an out-of-circuit district court opinion from the 1990s. *See Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996). Another line of district court cases reaches the opposite conclusion, permitting a plaintiff to base a § 1692f claim on the same reasoning as a § 1692e claim. *See, e.g.*, *Virden*, 2019 WL 4862066, at *5. This line of cases finds its roots in *Currier v. First Resolution Inv. Corp.*, a Sixth Circuit opinion which states that "[t]he distinct characteristics of § 1692e and § 1692f can also inform one another." 762 F.3d at 536. The Court believes that this second line of cases is more in line with Sixth Circuit precedent and is a better way to handle multiple § 1692 claims at the motion to dismiss stage.

§ 1692f claim is also sufficient to survive a motion to dismiss. *See, e.g.*, *Virden*, 2019 WL 4862006, at *5.

**IV.  CONCLUSION**

For the above stated reasons, **IT IS HEREBY ORDERED** that Credit Control's Mot. to Dismiss, Dkt. 31, is **DENIED**.

**IT IS SO ORDERED**

*[signature: Thomas B. Russell]*

**Thomas B. Russell, Senior Judge**
**United States District Court**

April 14, 2022

# APPENDIX

**EXHIBIT A**

**Credit Control, LLC**
5757 Phantom Drive, Suite 330
Hazelwood, MO 63042
888-365-7146

Letter Date: 03/04/2021

Hours of Operation (ET):
M - TH 9a.m. - 6p.m.
F 8a.m. - 5p.m.

## Your Account Information

Current Creditor: Ally Financial Inc.
Original Creditor: Ally Financial Inc.

Our Acct.#:
Orig. Acct.#: *****1760
Amount Due: $9,733.77

## Savings Options

Dear Sarah E Elliott, please be advised, our client, Ally Financial Inc., has placed the above-referenced account with our office for collection. We want to bring this matter to your attention. Subject to your rights set forth below or as otherwise provided by law, we have developed the following option(s) for you to resolve your account for less than the total Amount Due.

1. Resolve your account in 1 payment of $4,381.00. You save $5,352.77!
2. Resolve your account in 6 consecutive monthly payments of $893.00. You save $4,375.77!
3. Resolve your account in 12 consecutive monthly payments of $528.00. You save $3,397.77!

Upon completion of one of the options above, your account will be considered resolved. This offer will remain open until at least 45 days after you receive this notice. We are not obligated to renew this offer.

## Payment Instructions

- Make a payment via our website at www.credit-control.com.
- Submit payment via U.S. mail to: PO BOX 100, HAZELWOOD MO 63042.
  Please include your account number in the memo section of your check or money order.
- Call us toll-free at 888-365-7146 to make payment arrangements. Calls are recorded and may be monitored for quality assurance purposes. You may ask for Mike Riley.

## Please Read Important Disclosures

This communication from a debt collector is an attempt to collect a debt. Any information obtained will be used for that purpose.

Unless you, within 30 days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by this office. If you notify this office in writing within the 30-day period that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by this office. Upon your written request within the 30-day period, this office will provide you with the name and address of the original creditor, if different from the current creditor.